JAMES M. QUIGLEY *v.* FRED I. SIMON ET UX.

[No. 398, September Term, 1974.]

*Decided February 14, 1975.*

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*Bernard F. Goldberg* for appellant.

*Fred I. Simon* for appellees.

MOYLAN, J., delivered the opinion of the Court.

The appellant, James M. Quigley, sued the appellees, Fred I. Simon and wife, for conversion of various work tools, equipment and material and for damages. At the end of five days of jury trial, the presiding judge granted a motion for directed verdict in favor of the defendant-appellees at the end of the plaintiff's case. The appellant appeals from that grant.

Shorn of unessentials, the appellant rented a townhouse property, 13027 Marquette Lane in Bowie, from the appellees on July 3, 1971. The lease was to run for three months. The appellant intended to operate a dental crown and bridge laboratory. Because of zoning difficulties, that plan aborted. Rent was paid for July but not for August and September.

On September 8, the appellees removed various items of material, tools and equipment and held them as a distraint against the unpaid rent. The appellant placed a value on the distrained goods of $4,464. The appellees characterized them as "trash and rubbish" although they only released one set of dental appliances to a dentist for $360 and later sold the remaining goods for $100. The value, however, is immaterial for purposes of the motion.

The appellees refused to release the goods to the appellant and refused to apprise him of the location of the goods. They were, it was revealed, in a padlocked farmhouse owned by the appellees. The appellees instituted formal attachment proceedings on September 29, 1971. The goods were not ultimately located and attached by the sheriff until November 11, 1971.

It is clear that the trial judge, in granting the motion, relied primarily upon the common law as to distress for rent, which permitted, under certain circumstances, self-help on the part of the distraining landlord:

"Now, the plaintiff seems to ground his case on the fact that the landlord had no right to seize this material and move it and then execute upon it and sell it. Now, it's with that premise in the law that the Court has considerable difficulty. There isn't any dispute about the fact that the landlord did pursue the legal process and eventually it was sold under that process.

My understanding of the history of the landlord and tenant in common law, a landlord had to remove possessions of a tenant who did not pay his rent, to another place. He did not store them on the demised premises unless the tenant consented. That ancient practice has been abrogated, to some extent, in this case by the statute which permits the landlord to seize goods on the premises and deal with them there without having to move them. But I would say that my understanding of the law is the option is still with the landlord and he may follow the older practice if he desires to clear out his equipment, clear out his premises of the other equipment and ready it for re-lease.

\* \* \*

I have done a little research on my own and I have considered this matter as carefully as I know how and I fail to see how there can be any action against the landlord who seizes a tenant's goods on the property for rent that is admittedly, according to the testimony in this case, to be due and owing. If there was rent due and owing, then whether the landlord's action in seizing the goods was motivated by malice or evil intent is immaterial. That's the Maryland law. Whatever his motive may have been in seizing the goods, if the rent is due and in arrears, malicious or not, the distraint lies."

The common law as to distress for rent, however, has now been pre-empted by statute. For the former law, see Rhynhart, *Distress*, 13 Md.L.Rev. 185 (1953). It is now

completely covered by Maryland Code, Real Property Article, Title VIII, "Landlord and Tenant," Subtitle 3, "Distress for Rent." Whereas distress at the common law was a remedy and not an action, see Rhynhart, *op. cit.*, it is now expressly made an action by Sec. 8-302 (a):

"Distress for rent is an action at law and shall be brought as provided in this section."

It was Chapter 915 of the Laws of 1965, effective January 1, 1966, which "completely revised and formalized the law of distress." *Universal C. I. T. Credit Corp. v. Congressional Motors, Inc.*, 246 Md. 380, 382. In describing the situation antecedent to the change and contributing to the need for the change, Chief Judge Hammond said in that case, at 382-383:

"Before 1966 distress was a mixture of rules of the common law, many stemming from feudal times, implementing and supplementing Maryland legislation and long-standing practice.

In 1964 the Committee on Laws of the Maryland State Bar Association said in reporting on the bill which later became Ch. 915 of the Laws of 1965:

'The present distraint law in Maryland is archaic in that a landlord's remedy of distress is exercised without supervision by any court in spite of the substantial rights, and important interests, of tenants and landlords which are involved. The sheriff or constable now acts merely as an agent of the landlord. No court record is made with respect to a distress proceeding including the levy and sale of goods on the leased premises.' (69 *Transactions of the Maryland State Bar Association* 305.)

Under the law as now codified, the procedures are expressly set out that a landlord must follow to distrain for rent, e.g. Section 8-303, dealing with the form and contents

of the petition; Section 8-304, dealing with the show cause order; Section 8-305, dealing with the levy, inventory and return; Section 8-308, dealing with the requirement that the goods levied on under distress shall be held *in custodia legis;* etc. Those procedures were not even arguably followed by the appellees here, who proceeded, as they might have at the common law, by way of self-help.

The indispensable predicate for the granting of the motion for directed verdict was that the common law remedy was still viable. It is not. Under the circumstances, the motion should not have been granted.

> *Judgment reversed; case remanded for new trial; costs to be paid by appellees.*